UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| AARON S. TALGO, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 09-05-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that he is disabled by low back pain, right shoulder pain, headaches, mental health impairments, and fatigue, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of post-traumatic stress disorder, personality disorder, attention deficit disorder, and intermittent low back pain, Finding 3, Record at 16; that he retained the residual functional capacity ("RFC")

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 18, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could not stoop more than occasionally, carry out more than simple, routine instructions, or do work requiring more than minimal contact with the public or more than occasional interaction with co-workers and supervisors, Finding 5, *id*. at 17;[2] that, considering his age (27 years old, defined as a younger individual, on the alleged disability onset date), education (at least high school), work experience (no transferable job skills), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 19-20; and that he therefore had not been under a disability from August 15, 2005, through the date of the decision (March 4, 2008), Finding 11, *id*. at 20.[3]  The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).
[3] The plaintiff is insured for purposes of SSD through December 31, 2009.  *See* Finding 1, Record at 16.

(1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's complaint also implicates Step 2 of the sequential evaluation process.  Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id*. at 1124 (quoting Social Security Ruling 85-28).

The plaintiff complains that the administrative law judge erred in (i) deeming his right shoulder impairment non-severe, (ii) arriving at an RFC determination unsupported by substantial evidence, and (iii) adopting unreliable vocational expert testimony.  *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 7) at 1-7.  I agree that reversal and remand are warranted.

### I. Discussion

#### A. Shoulder Impairment

The plaintiff alleged that he was disabled, *inter alia*, by a shoulder impairment, with his right shoulder being prone to dislocation and causing him pain.  *See* Record at 348-49.  The administrative law judge declined to find the shoulder impairment severe, stating:

> The [plaintiff] has occasionally complained of right shoulder pain.  X-rays and clinical examinations have failed to reveal any significant structural or functional

3

>  abnormality in that joint.  The claimant did not pursue recommended physical therapy for his reported shoulder problems.  The undersigned does not find that the [plaintiff] has a severe right shoulder impairment.

*Id*. at 16 (citations omitted).  As the plaintiff points out, *see* Statement of Errors at 1-2, the administrative law judge plainly erred in finding an absence of objective medical evidence of a significant structural abnormality.  An MRI ordered by James F. Queenan, D.O., of Belfast Harbor Orthopedics, performed on December 15, 2006, did reveal a structural abnormality of the plaintiff's right shoulder, namely, Hill-Sachs deformity.  *See* Record at 313-14, 316.[4]  The plaintiff's treating physician, Richard B. Read, M.D., had referred him to Dr. Queenan after the plaintiff complained on October 31, 2006, of "chronic pain in his right shoulder and left ankle[.]"  *Id*. at 287.  The MRI finding was consistent with the plaintiff's report to a treating source, evidently Dr. Queenan, on December 4, 2006, that he had originally dislocated his right shoulder in a fight at age 15 or 16 and had dislocated it about 15 times since then, most recently a year earlier.  *See id*. at 325.  The plaintiff reported that, although he had not had a dislocation in a year, he believed that he protected the shoulder too much and he wanted it "fixed."  *Id*.  Dr. Queenan diagnosed him with right shoulder instability.  *See id*. at 311.

While the administrative law judge offered a second basis for finding the impairment nonsevere – failure to comply with prescribed physical therapy treatment, *see id*. at 16 – his Step 2 finding remains problematic.  As the plaintiff's counsel noted at oral argument, the finding is unsupported by the opinion of a medical expert.  The record contains only two expert physical

---

[4] The plaintiff defines Hill-Sachs deformity as an "indentation or groove on [the] posterolateral aspect of [the] humeral head, probably due to compression of [the] humeral head on [the] posterior lip of glenoid, [that] suggests repeated or chronic anterior shoulder dislocation, [and] may occur after one episode of dislocation associated with: Bankhart lesion of [the] glenoid."  Statement of Errors at 2 n.1 (citation and internal quotation marks omitted).  At oral argument, counsel for the commissioner had no objection to use of that definition.  In reviewing the MRI result, Dr. Queenan noted, "Officially, no glenoid labral tear is seen[,] though this is [q]uestionable to myself."  Record at 314.

RFC assessments, those of Disability Determination Services ("DDS") nonexamining consultant Donald Trumbull dated July 28, 2006, deeming the plaintiff to have no physical restrictions, *see id*. at 255-62, and Dr. Read, dated January 28, 2008, finding that the plaintiff could lift and carry only 10 pounds occasionally and less than 10 pounds frequently and could stoop only occasionally, *see id*. at 307-10.

Dr. Trumbull did not have the benefit of the December 2006 MRI finding. Dr. Read, who did, found the plaintiff's lifting and carrying capacity substantially restricted. The MRI finding of a Hill-Sachs deformity suggests an impairment significant enough to clear the *de minimis* hurdle of Step 2. The administrative law judge, as a layperson, was not qualified to find otherwise on the basis of the raw medical evidence. *See, e.g., Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record."); *Stanwood v. Bowen*, 643 F. Supp. 990, 991 (D. Me. 1986) ("Medical factors alone may be used only to screen out applicants whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment. . . . [A]n impairment is to be found not severe only if it has such a minimal effect on the individual's ability to do basic work activities that it would not be expected to interfere with his ability to do most work.") (citations and internal quotation marks omitted).[5]

---

[5] The plaintiff also complains that the administrative law judge impermissibly discounted his credibility on the basis of his failure to follow prescribed medical treatment, arguing that, per Social Security Ruling 82-59 ("SSR 82-59"), such a failure is material only if the treatment could be expected to restore a claimant's capacity to work. *See* Statement of Errors at 5. In so arguing, the plaintiff confuses two separate concepts. SSR 82-59 applies only when a claimant has been determined to be disabled but for failure to seek prescribed treatment that is expected to restore his or her ability to work. *See* SSR 82-59, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 793. The administrative law judge highlighted the plaintiff's failure to follow prescribed treatment not for that purpose, but for the purpose of assessing his credibility. This is permissible, even at Step 2, provided that the
*(continued on next page)*

### B.  RFC Assessment

#### 1.  Physical RFC

The plaintiff next faults the administrative law judge for arriving at a physical RFC finding inconsistent with, and unsupported by, both expert RFC opinions of record, those of Drs. Trumbull and Read.  *See* Statement of Errors at 2-4; *see also* Record at 255-62, 307-10.  The plaintiff adds that the administrative law judge compounded the error by impermissibly discounting the Read opinion.  *See* Statement of Errors at 3.

The plaintiff is correct that the record is devoid of any expert opinion that he could lift and/or carry up to 20 pounds frequently and up to 10 pounds occasionally.  That the administrative law judge so found in the absence of such "positive evidence" is error.  *Rosado*, 807 F.2d at 294; *see also, e.g., Gordils*, 921 F.2d at 329.

The etiology of the error, as counsel for both sides acknowledged at oral argument, is clear.  The administrative law judge intended to convey the Read RFC opinion to the vocational expert at the plaintiff's hearing; however, no doubt because the form that Dr. Read filled out is typeset in a confusing manner, he misread it.  *See* Record at 307, 366.  He thought that Dr. Read had checked boxes indicating that the plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; in fact, Dr. Read indicated that the plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently.  *See id*. at 307.

Upon realizing the mistake, the administrative law judge endeavored to discount the Read opinion on the ground that there was "no persuasive evidence to support such a degree of limitation."  Record at 19.  He added: "In view of the lack of objective medical findings of

---

adjudicator takes into account any explanation for the noncompliance.  *See, e.g*., Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR 96-7p"), at 135-36, 140.  The problem for the administrative law judge is that his Step 2 finding rests on a negative credibility assessment alone.  For the reasons discussed above, this is an insufficient foundation in the circumstances.

6

significant physical limitations, the undersigned is affording the claimant considerable benefit of [the] doubt by restricting him to light work." *Id*. (citation omitted). As the plaintiff points out, this Step 4 finding repeats the flaw at Step 2 of overlooking the existence of an MRI report documenting a structural abnormality of the plaintiff's right shoulder.

The error might nonetheless have been harmless had the administrative law judge embraced the opinion of Dr. Trumbull, had that opinion constituted substantial evidence of the plaintiff's RFC, and had the administrative law judge explained that he nonetheless gave the plaintiff the benefit of the doubt by finding a lesser lifting capacity. However, the administrative law judge never mentioned Dr. Trumbull's RFC opinion. *See id.* at 19. As the plaintiff's counsel noted at oral argument, the Trumbull opinion in any event cannot stand as substantial evidence of RFC because Dr. Trumbull, who issued his report in July 2006, did not have the benefit of the December 2006 MRI report documenting structural abnormality of the shoulder. *Compare id*. at 255-62 *with id*. at 316; *see also Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

The administrative law judge, as a layperson, was not competent to assess the plaintiff's physical RFC on the basis of the raw medical evidence of record. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted); *Gordils*, 921 F.2d at 329.

The administrative law judge's physical RFC finding accordingly is unsupported by substantial evidence of record.

### 2. Mental RFC

The plaintiff next argues that the administrative law judge's mental RFC finding is unsupported by substantial evidence, the administrative law judge having (i) mistakenly found that the plaintiff demonstrated "inconsistent effort on neurological testing" performed by Dorothy A. Strom, Ph.D., and (ii) failed to properly evaluate the opinions of DDS consulting examiner Donna Gates, Ph.D., that he "may have limited persistence, which will impact his ability to maintain his attention and pace[,]" and DDS nonexamining consultant Thomas Knox, Ph.D., that he was moderately limited in his ability, *inter alia*, to maintain attention and concentration for extended periods, to perform activities within a schedule, and to maintain regular attendance.  *See* Statement of Errors at 4-5; *see also* Record at 18-19, 149-55, 231-55, 251-53.

This argument is without merit.  The administrative law judge essentially adopted the mental RFC finding of Dr. Knox, reflected in section III of his mental RFC form.  *Compare* Finding 5, Record at 17 *with id*. at 253.  Dr. Knox, in turn, had the benefit of both the Strom and Gates reports.  *See id*. at 253.  Any error in the administrative law judge's direct evaluation of the Strom and Gates reports was rendered harmless by his adoption of Dr. Knox's expert opinion factoring in that evidence.  Finally, Dr. Knox's written narrative contained in section III of the form, rather than the checkboxes in section I to which the plaintiff points, constituted his mental RFC assessment.  *See* Social Security Administration Program Operation Manual System

§ DI 24510.060(B)(2)(a) & (4)(a). Thus, there was no error in failing to evaluate the checkbox information.[6]

### C. Vocational Testimony

In his final point of error, the plaintiff takes issue with the administrative law judge's adoption of assertedly "unreliable" vocational expert testimony, arguing that the administrative law judge (i) failed to detect inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") and (ii) propounded to the vocational expert flawed RFC findings. *See* Statement of Errors at 5-7.

The plaintiff is correct that the propounding to the vocational expert of a flawed RFC finding undermines reliance on that expert's testimony to carry the commissioner's Step 5 burden, warranting reversal and remand. *See, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions."). I need not, and do not, consider whether the vocational expert's testimony was otherwise unreliable, as the plaintiff contends.

### II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

---

[6] At oral argument, the plaintiff's counsel acknowledged that Dr. Knox's mental RFC assessment is contained in the narrative in section III of his report rather than in the preceding checkboxes. However, he contended that the administrative law judge erred in embracing the Knox RFC opinion because Dr. Knox relied on, but misconstrued, Dr. Strom's report, inaccurately indicating that Dr. Strom found "overall attention and response control within [the] average range on testing[,]" Record at 253, when in fact Dr. Strom noted significant problems with concentration, persistence, and pace. The argument is without merit. Dr. Strom did state in her report: "Overall attention and response control were within the average range, consistent with assessed intellectual ability." *Id*. at 151-52.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of September, 2009.

                                                      /s/  John H. Rich III
                                                      John H. Rich III
                                                      United States Magistrate Judge